## Case No. 16,224.

### UNITED STATES v. SARCHET.

[Gilp. 273.] [1]

District Court. E. D. Pennsylvania. Feb. Term, 1832.

TRIAL—PROVINCE OF COURT AND JURY—CUSTOMS DUTIES—CLASSIFICATION—EVIDENCE —BOLT IRON.

1. The court have no right to give the jury any direction upon questions of fact, but it is their duty to call their attention to particular points, and to observe upon the tendency, force, and comparative weight of conflicting testimony.

2. In the construction of laws relating to trade and commerce. such as those of May 22, 1824 [4 Stat. 25], and May 19, 1828 [Id. 270],

[1] [Reported by Henry D. Gilpin, Esq.]

the vocabulary of merchants is to be adopted in preference to that of mechanics.

3. To authorise the entry of small pieces of bolt iron, under the name of "chain links," it must be proved that they have been previously known in commerce by that name.

[Cited in brief in Cutler v. Currier, 54 Me. 88.]

4. Where a piece of bar or bolt iron has been changed by subsequent manufacture, it ceases to be subject to duty as such, although it may not have become a new and distinct manufacture, or assumed a new name or use.

On the 5th January, 1831, John F. Sarchet, imported into the port of Philadelphia, by the ship Alexander, from Liverpool, fifty-six sheet iron casks containing small pieces of round iron, from three to eight inches in length, and about half an inch in diameter. They were invoiced and entered at the custom house as hardware, and the duties were calculated at the rate of thirty-seven dollars a ton, being the rate of duty chargeable on "rolled bar or bolt iron" under the provision of the act of May 19, 1828. The whole amount of duty on the invoice amounted to four hundred and sixty-six dollars and ninety-one cents, for which three bonds were given. The first of these, for one hundred and fifty-five dollars and ninety-one cents, became due on the 5th September, 1831, and not being paid, the present suit was brought to recover that sum with interest. On the return day, at November sessions, the defendant in open court, the United States attorney being present, made an affidavit that an error had been committed in the liquidation of the duties demanded upon the bond. He specified as the error alleged to have been committed, "that the invoice of iron upon which the said duty had been assessed, was estimated as bar or bolt iron, manufactured in whole or in part by rolling, at thirty-seven dollars per ton, instead of being estimated as a manufacture of iron, not otherwise specified, in the act of May 22, 1824, and therefore as paying an ad valorem duty of twenty-five per cent.; or as scrap iron and therefore paying a duty of sixty-two and a half cents per hundred weight." Upon this affidavit the court granted a continuance. On the 12th March, 1832, the case came on for trial before Judge Hopkinson and a special jury. Numerous witnesses were examined on the part of the United States, and also of the defendant, with a view to prove the character and designation of the articles mentioned in the invoice. both as an object of commercial traffic, and as the subject of manufacture to a greater or less extent.

Mr. Gilpin, U. S. Dist. Atty.

In this case, an invoice of articles was entered by the defendant at the custom house, in Philadelphia, as "hardware." On inspection they were found to consist of pieces of round iron, perfectly straight, varying from three to eight or ten inches in length, and from less than half an inch to more than three quarters of an inch in diameter. They

were appraised as pieces of "bolt or bar iron, made by rolling," and the duty was charged at the rate of thirty-seven dollars a ton, pursuant to the second clause of the first section of the act of May 19, 1828. This prescribes, "that, from and after the first day of September, 1828, in lieu of the duties now imposed by law, on the importation of the articles hereinafter mentioned, there shall be levied, collected, and paid the following duties; that is to say; first, on iron, in bars or bolts, not manufactured in whole or in part by rolling, one cent per pound; second, on bar and bolt iron, made wholly or in part by rolling, thirty-seven dollars per ton." The only question in the case is one of fact, whether or not these articles, which, it is admitted are made by rolling, ought to have been appraised and charged as "bar or bolt iron." They are so considered by the officers of the customs, men experienced and disinterested. To confirm this, the evidence of merchants largely engaged in the importation of iron; of American manufacturers of a similar article; and of practical mechanics, who use it as a material for various purposes, has been produced. This testimony supports the construction given by the appraisers, and is amply sufficient to justify the charge of duty which has been made. P. L. 1828, p. 43. The allegation of the defendant, that these pieces are not to be considered as "bar or bolt iron" because they are now a manufacture of iron, cannot be sustained, unless it is shown that they have changed their character and assumed some new use and name. Every partial alteration is not sufficient; it must be such a one as converts them into some new article, adapted to a specific purpose. It has been decided that round copper bars and copper plates, although turned up at the edges, come within the provisions of the laws by which copper in bars and copper in plates are exempted from duty. More than this, it has been decided that round copper plates turned up at the edges, and invoiced by the specific name of "raised copper bottoms," do not lose that privilege of exemption. Can it then be said, that the mere cutting of a long bar of iron into short pieces, so changes its character as to make it a new manufacture? U. S. v. Kid, 4 Cranch [8 U. S.] 1; U. S. v. Potts, 5 Cranch [9 U. S.] 284. But if we were to admit that there had been a change in this article, such as to prevent its being considered any longer "bar or bolt iron," what has it become? According to the defendant's own allegation it has become a "chain link," part of an iron cable or chain; and as such it would be subject to a higher duty than that now demanded. By the fifth clause of the first section of the act of May 22, 1824, the duty to be levied "on iron cables, or chains, or parts thereof is three cents per pound," which is equal to sixty-seven dollars and twenty cents per ton. 3 Story's Laws, 1944 [4 Stat. 25].

Mr. Cadwalader, for defendant.

The first point of view, in which the consideration of this case presents itself, is, as to the construction of the act of congress, under which the right to levy this duty is claimed. That act is to be construed strictly in favour of the defendant. If not altogether a penal statute, it is in the nature of one, because penalties are imposed for its evasion. What is the just construction to be put upon its provisions? Clearly that it means to describe, by its general commercial designation, an article, well known in commerce, which had been frequently before the subject of similar legislative provisions. The act of 1828, is but part of a series of acts relative to the levying and collecting of duties on imported merchandise. In all of them, iron of this character is referred to. In the act of April 27, 1816 [3 Stat. 310], it is referred to as "iron in bars or bolts;" in that of April 20, 1818 [3 Stat. 460], it is called "iron in bars and bolts;" in that of May 22, 1824, it is designated as "iron in bars or bolts;" and finally in the act of May 19, 1828, it is described as "bar and bolt iron." All these expressions denote one and the same commercial article; they are illustrative of one another; and the term "bar and bolt iron," in the last, means the "iron in bars and bolts" alluded to in the previous acts. It is a well established rule, that words of a general signification in a statute, which are in juxtaposition with other words of a more confined and limited sense, are to be understood according to the more limited sense. If there were no such rule, the words in these several acts of congress, all evidently referring to the same subject matter, would impose it upon us. The law of May 19, 1828, meant to tax an article, namely, bar and bolt iron, which had been more particularly described in the previous laws as iron in bars and bolts; an article well known to commerce. There was no intention to tax a new material, but simply to increase an existing duty. In order therefore to subject the articles, which are the object of the present controversy, to the duty imposed on them, they must be iron in bars or bolts. That they are not so, simple inspection, independent of evidence, sufficiently establishes. 3 Story's Laws, 1589, 1706 [3 Stat. 310, 460]; 3 Story's Laws, 1944 [4 Stat. 25]; U. S. v. Tenbroeck, 2 Wheat. [15 U. S.] 248; U. S. v. Goodwin [Case No. 15,229]; Stradling v. Morgan, Plowd. 204; Wiseman v. Cotton, 1 Lev. 79; Waller v. Travers, Hardr. 309; Stevens v. Duckworth, Id. 344; Crowley v. Swindles, Vaughan, 173; Gale v. Reed, 8 East, 80; Miller v. Heller, 7 Serg. & R. 32. These articles therefore, not falling within the description of "bar and bolt iron," as contemplated by the act, and not being a mere raw material, must be either scrap iron, or a manufacture of iron. They bear more resemblance to the former, than to any among the various articles of iron described

in the act, but being prepared for a specific purpose, do not perhaps strictly fall under that designation. They are in fact a manufacture of iron not enumerated, and as such embraced in the fifth clause of the first section of the act of May 22, 1824, which declares that there shall be levied "on all manufactures, not otherwise specified, made of iron, a duty of twenty-five per cent. ad valorem." The term "bar or bolt iron," is not used in the act of congress as descriptive of a manufactured article; it is not so considered either in commerce or by the mechanic; it is in fact the raw material of the blacksmith. If therefore it undergoes any ulterior process, such as being cut, bona fide for a specific purpose, it ceases to be this raw material, it ceases to retain its former denomination, it ceases to be liable to duty as an article so known and denominated. This would be true whether or not it acquired any other known name. It might remain a nondescript, an article partly manufactured, but having ceased by a process of manufacture, however incomplete, to be what it was before, it acquires a new character, by which the duty chargeable is to be regulated. Such is the fact here. It has been proved that these bars of iron have been cut into pieces, bona fide, for the purpose of making chains or chain cables. This has been done in the regular course of manufacture, and it has therefore terminated their character as bar or bolt iron.

But the evidence enables us to proceed a step farther. They have not merely ceased to be bar or bolt iron; they have become a manufactured article, known in commerce. It has been settled that under the revenue laws, the commercial designation of an article of import, is that by which it is to be taken, in estimating the duties. Now these pieces of iron are known in commerce, and among those who deal in them, as "chain links." They are imported as such. They are to be used for certain purposes of manufacture. It is immaterial whether or not they agree in form or appearance with what is meant by the term "link" out of the trade. It is sufficient that they bear that name, among those who use them. That they do so has been proved. It is no answer to say they are "parts of a chain cable;" for that term is well known also in commerce, as designating not a single link but certain portions, some fathoms in length, into which cables are necessarily divided. The result, therefore is, that these pieces are not bar or bolt iron; but that they are a manufacture of iron not specified, and subject to a duty of twenty-five per cent. ad valorem, which the defendant has been always willing to pay.

Mr. Gilpin, for the United States, in reply.

Admitting the view of the several acts, which is taken by the defendant, to be correct, it does not sustain the inference drawn from it. Although it may be true, that "bar and bolt iron," in the last law, embrace the same article as the "iron in bolts and bars" designated in those previous, yet it does not follow that the former is to be construed solely by the latter. It may be true that more precise words sometimes control such as are general, but it is incumbent on him who would restrain the general words, to show that the particular words do of necessity restrain them, and were used intentionally for that purpose. Now such is not the case here. The act containing the more enlarged description was subsequently passed. The inference is, not that it was to be limited by what went before, but that what went before was to be extended by it; that if the term "iron in bolts and bars" was susceptible of an interpretation, which did not include every species of "bar and bolt iron," then such limitation should be removed. But were it otherwise, what is there to exclude these pieces from the description of "iron in bars and bolts?" The length of the bars or bolts is not specified, and, though short, they are unquestionably bars. If not, they are at least pieces of bars, and of course subject to the same duty as the whole bar would be, unless there is a distinction in the commercial character of pieces of iron, according to their length, which no evidence has established. There is nothing therefore in the construction or comparison of these several acts, which exempts the articles in question from duty, either as "iron in bars or bolts" or as "bar or bolt iron," unless its character has been changed by subsequent manufacture.

The real and sole question therefore is, whether each of these pieces of iron has become "a manufacture of iron" not specified in the law. In the first place it is to be observed that it is not so imported; it is designated in the invoice not as a particular manufactured article, but generally as hardware, a term broader than "bar or bolt iron." But admitting that these pieces were imported to be used for a specific purpose, and had been partially prepared for it, surely that is not sufficient to change their character; bolt or bar iron may be so prepared and so imported, but it continues to be what it originally was, until it is actually converted into a new and specific article. Every alteration does not confer on it a new character as a manufacture; if so every ingredient in every form would be an object of distinct designation and charge. To constitute a new and different article, it must be so changed as to have a positive and specific use in its new state. It must not only cease to be a piece of "bar and bolt iron," but it must be an article completely manufactured for, and applicable to, some distinct and positive use. The force of this seems to be admitted by the defendant, when he attempts to prove each of these pieces of iron to be a "chain link." Whether he has done

so or not, is a matter of fact for the jury. That it is not a link in the common acceptation of the word will hardly be denied; and the evidence of the merchants, manufacturers, and mechanics, in our opinion, establishes the same thing. It never has acquired the character of a commercial article designated by a fixed name; it is simply a piece of bolt or bar iron prepared for an ulterior purpose, but until it is used for that purpose it does not assume a new designation, or become a specific object of trade. It continues to be bolt or bar iron until it becomes a "chain link," and the mere fact of importing it for that purpose, or the mere intention of so applying it, does not operate to convert it into the new "manufacture." When it has become part of a chain, or capable of being used as part of a chain, it is then the article which the defendant asserts it to be, but not before. And when it becomes so does it not at once fall within the fifth clause of the first section of the act of May 22, 1824? Is it not to all intents and purposes "part of an iron cable or chain?" The very assertion that it is a "chain link," seems to admit that it must be "part of a chain." The construction, by which it is attempted to limit this expression, has no foundation either in the words or apparent intention of the law. There is no conceivable reason why it should relate to a greater or less number of links; no particular length or number is designated; the object was to lay a duty on chain cables, and chains manufactured wholly or partially abroad; and surely this intention would equally relate to long or short chains, to such as were in one piece, in several pieces to be afterwards united, or in links to be fastened together here. The convenience of transportation, or the difference of profit, may justify the merchant in importing them, in one form or the other, but the manufactured article is the same, and is fully embraced by the broad and general phrase used in the law. If therefore these pieces have ceased to be pieces of "bar or bolt iron," they have become chain links, and, as such, parts of a chain, which are subject to an amount of duty, even higher than that claimed in this suit.

HOPKINSON, District Judge (charging jury): The general question in issue is, to what rate of duty, under the revenue laws of the United States, are certain articles of iron or hardware subject, which were imported by the defendant into this port in January, 1831? The acts of congress impose various rates of duties on iron of various kinds or descriptions, and it is for you to decide under which of these descriptions the importation in question falls. (1) Is it bar or bolt iron? On this article the law of May 19, 1828, lays a duty of thirty-seven dollars per ton, and this is the duty claimed by the United States in this suit. (2) Is it scrap iron? On this article the duty is sixty-two and a half cents per

hundred weight. (3) Is it part or parts of an iron cable or chain? On this the law of May 22, 1824, lays a duty of three cents per pound. (4) Is it a manufacture of iron, not specified in the acts of congress? If so it is subject to an ad valorem duty of twenty-five per cent; and this is contended for by the defendant. The controversy then is mainly between the first and the last descriptions; between the bar or bolt iron, and a manufacture not enumerated in the law. Scrap iron seems to be put out of the question by the evidence on both sides. It appears to be neither old iron worn by use, nor pieces of new iron which remain of a large bar, cut or divided for some particular purpose, but too small for the purpose intended. As to the iron cable, or chain, or parts thereof, a good deal of contradictory evidence has been given. At present this may be put aside. It is insisted upon by the United States rather as an alternative, than a direct claim. The real demand in this bond and in this action is for a duty on the articles in question, as bar or bolt iron. The substantial and real allegation of the defendant is, that they are a manufacture of iron not specified under any of the descriptions of iron mentioned in the act.

Your inquiry will be, to ascertain whether these articles are embraced by the description of bar or bolt iron, as used and intended by the act, or whether they fall under the general head of non-enumerated manufactures of iron.

You will observe that it is incumbent on the defendant, on the ground he has taken, to bring them under the clause of the law he contends for, and show not only that they are not specified in the act, but that they are a manufacture of iron. He contends that they are so; that they are so known under the denomination of chain links; so known as an article of commerce. You have seen that the pieces of iron produced are of several kinds; some of them are straight, but cut from the bar in certain lengths, and nothing more done to them; some are also straight, but sloped at the ends; and some are twisted or bent, but not closed at the ends. The last kind, however, you are not now called to decide upon; the importation in question being of the straight pieces only. The defendant contends that these are all equally known as chain links; that chain links are nowhere mentioned or specified in our revenue laws; and therefore that they are a manufacture of iron not enumerated, or subjected to a specific duty. Whether these pieces of iron, cut into various lengths, of various diameters and shapes, are, truly speaking, nothing more nor less than bar or bolt iron, cut into short pieces, but not thereby changing their name and character, nor thereby becoming a new and different manufacture of iron; or whether, by this operation or process of cutting, for a particular object, that is, for the purpose of making chain links, they ipso facto become a new and different manufacture of iron; whether, in the lan-

guage of commerce, they become chain links, and are so received and known by those engaged in the iron trade; these are the questions you are to decide, for they are questions of fact, to be determined by the evidence you have heard.

It is not my right or desire to give you any direction upon such questions, but it is my duty to assist your inquiries as to particular points, to which your attention should be specially directed; to observe upon the tendency and force of the prominent facts given in evidence, and the comparative weight of conflicting testimony. This I shall do briefly and generally, although the witnesses have been unusually numerous and their examination has occupied several days.

(1) The defendant insists, that these pieces of iron are known as an article of commerce, by the name of "chain links." Has he supported this pretension? Has he shown that they have been an article of commerce under that or any other name; that is, under any name descriptive of a known manufacture of iron? Is he not the only person in the United States who has imported them as a distinct, acknowledged manufacture of iron from the bar, as chain links? It is true that one of the witnesses, Amos Noe, a blacksmith and not an importer, says that he knew chain links to be brought from the Peru Iron Works, in the state to the city of New York, and also from England to Philadelphia; but as to the latter, he admitted it was only by Mr. Sarchet. We have no description of what they were, whether like these we have before us, or in a perfect and finished state; nor how they were brought in, whether as a separate article called "chain links"; whether they were so invoiced or not, so entered at the custom house or not. Of all these matters the witness knew nothing. The same remarks may be applied to the testimony of Washington Jackson, who says he never knew an article of commerce called "chain links," but that some were offered to him for sale by an Englishman; the offer was made here and the article was in New York, and Mr. Jackson never saw it. I presume if such importations of chain links were made, eo nomine, or by any specific name of manufacture, other than that of bar iron, the books of the custom house at New York would show it, and would show how they were entered, and received and charged with duty. You will judge whether the articles before you have been known in commerce as "chain links," and have been so imported into the United States by any body but the defendant. I should perhaps notice the examination of witnesses before a committee of congress at Washington, in which chain links are mentioned as a known article; certainly they are; they have been known as long as chains have been known, whose parts have always been called "links"; but the question remains whether the name has ever been applied to such articles or pieces of iron as are now in dispute. That the link of a chain is a manufactured article and has always had that name, cannot be doubted; but you are to inquire whether the pieces before you have or have not been comprehended or classed under that name.

(2) Supposing, however, that the defendant has failed in showing that these things are known in commerce as "chain links," he may nevertheless make out his case and bring himself within the provision of the act of congress, if he has shown that these articles, in their present state, are a manufacture of iron, are manufactured chain links, as he alleges them to be; for when he asserts that they are a manufacture, he must tell you what they are; and he has undertaken to prove that they are, in the language of the trade, or the nomenclature of those who ought to be depended upon for information on this point, manufactured chain links, so considered and known. Upon this subject you have had the benefit of the experience and opinions of three classes of dealers in iron: (1) mechanics; (2) merchants; (3) manufacturers. To which of these classes should you look with the most confidence for information? You have been truly told by the counsel for the defendant, that this is a question of construction of a law relating to trade and commerce; a commercial question. It is certainly so. It would seem to follow from this that the vocabulary of the merchant, of the importer, of the counting house, would be most safely adopted, and not that of the mechanic, of the smith's shop. May you not also put your faith on the manufacturer, the maker of the article, for its appropriate character and name, rather than on the mechanic, who turns it to a new use? All trades have their peculiar names for things, peculiar phrases in their business; a sort of shop short-hand; well understood in the shop, which may be very different from the denomination of the article in the orders and invoices of merchants, or in the usage of the manufacturer, or in common parlance. The shoemaker may say to his journeyman, when he hands him a piece of leather, take this and cut out a shoe; but is it a shoe as soon as cut? The blacksmith may say, take this bar or rod and cut a linch-pin; but is it a linch-pin as soon as the piece intended for the linch-pin is cut off and separated from the bar? So of a horseshoe, and other articles made in a smith's shop.

I. What have the mechanics testified? Seven were called by the defendant: (1) John Sarchet. You will take his testimony with such allowances as his peculiar situation in this cause may suggest to you. He says, he has always heard these pieces called "links"; that they are the raw material of a chain. (2) William Corkley calls them "links." (3) William Pritchett calls those that are bent "chain links"; does not know any other name for the straight ones. (4) Luther Stebbins says when they are cut expressly for links he calls them "links." (5) Amos Noe calls them all "links," and never

heard them called any thing else. (6) Samuel Hulse would call all the articles "links," but will not say as to the straight ones. (7) Joseph Riter calls it a "link" when cut. (8) Wesley Blackman says they are links. These are all the mechanics called by defendant. They do not all agree in respect to the straight pieces. I should add that all of them but one have worked or are now working in the shop of the defendant. I mention this, not to impeach their credibility, but that you may consider how far they have derived their knowledge and opinions from the practice or language of the defendant's shop. You will also keep in mind that they, or some of them, speak of their knowing these pieces by this name at other places than his shop, or than this city. On the contrary, several mechanics, one of them largely concerned in chain making, testify that they have never heard such pieces of iron called "chain links." Their names and testimony must be in your recollection. Allowing credit to all these witnesses, the result would seem to be, that the name of a "link," given to these pieces of iron, although used in some shops, and by some mechanics, is not universal; is not known to and adopted by all the trade. We may remark that all these witnesses agree; and, indeed, it is obvious to your own inspection, that these pieces are not in fact links, that is, perfect links; that they cannot be used as links without a further process of manufacture. The straight ones must be bended, and the bended ones must be welded, before they can become links of a chain for the purposes intended. They have passed the first process of a manufactured link, of a manufacture different from the bar from which they were cut. Are they therefore a manufacture, are they links? These are inquiries you are to make, and to satisfy yourselves in the result. It has been strongly argued by the defendant's counsel, that these pieces were exported, bona fide, for the purpose of making chains, and he concludes from this that they may be called links, or at least a distinct manufacture, not specified in the act. Is not the basis of this argument too broad? If a bar of iron should be cut, in England, into pieces suitable to make a horse shoe, and should be really exported for that purpose, could it therefore be a new manufacture, under the name of a horseshoe, for which it is intended, or under any other name?

II. I will next call your attention to the evidence of the merchants, or importers of iron: (1) Joseph R. Evans says none of these articles answer the denomination of bar iron. He should call the bended ones "chain links," but is doubtful as to the straight ones. He does not know what name is to be given to them. They could be made into spikes and so could the crooked ones. He has never imported any cut iron, or any cut into links. But he says there is no difference between the straight pieces and the bars, except that they are cut into pieces. (2) William Welsh never imported any iron, his father occasionally imports it; he never heard bar iron called so, when cut into pieces for a particular purpose; he would call none exhibited to him bar iron, except the long bar. (3) George Handy never heard of such an article in commerce as "chain links." (4) William Thomas sees nothing here that answers the description of bar iron but the long one. The crooked pieces are links unwelded, the others pieces of rod iron cut off. It is iron cut off for links, and he would call it a piece of rod iron. When a rod is cut up, it loses its quality of bar iron and becomes pieces of iron. (5) Edward Carpenter says the long piece is bar iron but none of the short ones. He would call them pieces of bar iron, but not bar iron. (6) Robert S. Johnson would call the flat piece, "a piece of bar iron." He imports bar iron of all lengths, from the shortest pieces to a long bar. The small pieces come with bundles to make up the weight. He never made an importation of small pieces and would not receive them. He does not know chain links as an article of commerce. These are pieces of bar iron, though not bars of iron. (7) Thomas Haven says it requires length to make a bar. A bar that is broken is called a "piece of a bar"; when cut, a "bolt"; if bent, a "hoop." Has never received bolt iron, less than seven feet long; nor bar iron less than eleven. In this country three feet long, and upwards. He never heard such a piece called a link. He would not enter them as chain links, or as bar iron, but probably as pieces of bars. There is no article of commerce called chain links, and he never heard of their being imported. (8) Samuel Spackman understands bar iron to be of the usual length. A small piece would be called "part of a bar of iron." He never heard of these links imported. He should not call the straight ones links, but part of a bar or bolt, and the twisted ones, pieces intended for links. (9) Henry Cope, by bolt and bar iron, understands long bolts or bars which are straight. He should call a short one a piece of bolt iron. So far the witnesses for the defendant. (10) John Steel, a custom house officer, says they do not estimate the duties on bar or bolt iron by the length. It is usually from ten to fifteen feet. It does not lose its character by being short. He does not consider it to be a manufactured article by being cut; he considers it as bolt iron, hoop iron, or prepared for hoops, but not closed and welded. So iron prepared for railroads is punched with holes. (11) Edward Smith considers the small straight pieces to be short bar iron. He would enter them as bolt iron. They might be applied to many purposes. They were sent short because so ordered. Bolt iron is of various lengths. Varieties of articles of various shapes are sold as bar iron.

If a bar of iron were cut into pieces in England, it would still be bar iron. Hoop iron, rolled out thirty or forty feet and cut shorter and doubled up, is still hoop iron and pays the duty as such; it is not considered as a manufacture of iron. He orders bar iron of different lengths, for the fore and hind wheels of a wagon, but they are not therefore a manufacture, because cut for that purpose. (12) Washington Jackson calls the straight pieces, pieces of round iron, of bolt iron, not chain links. He should not call them a manufactured article if not finished for a particular purpose. He never knew them as an article of commerce. · If he wanted bar iron of a shorter length, he would order it as bar iron of a certain or required length. (13) Thomas M. Smith calls the straight pieces, bolts of iron; the bent ones, bent bolts. If he was to import straight pieces cut into lengths, he would enter them as bar iron. He has imported hollow tire iron, to an order, and paid duty as common iron. This is all the testimony of the commercial interpretation of the terms bar iron, bolt iron. Some of these witnesses are both importers and manufacturers; you will remember which of them stand in this double capacity, if you shall think it of importance in considering their evidence.

III. The last class of witnesses is the manufacturers of iron, the forge masters as they have been called, who manufacture iron from the ore to the bar; but not beyond that. It is made into pigs, into blooms, and into bars, which is the third state or process of manufacture. The weight and value of the testimony of these witnesses is impeached on the ground, that as they do not manufacture the iron beyond the bar, they know nothing of these links, or of what is or is not a link, which is a process of manufacture beyond or from the bar. You will judge of the efficacy of the argument, but I may remind you that it is to those manufacturers that orders go from the importer, and that the language of the importers, the commercial name of an article, should be known to the manufacturers, or they would not understand these orders. They must have a common vocabulary as to the things in which they deal together; and in this respect, are both separated from the mechanics or blacksmiths, who buy their iron as they may want it for particular purposes, and have their own manner of designating these purposes, and giving their due orders to the workmen of their shops. It is also to be remarked, that if these iron masters are not judges of what may be called a link, because they do not make it, they are specially competent judges of what is considered to be a bar of iron, or bar iron, it being their business and daily experience to make it, and to sell it as a known article of merchandise.

It has also been urged upon them that they have an interest in this question, and are in fact the true and real plaintiffs in the cause; it is at the same time admitted that the blacksmiths have a common cause on the other side, and it is said they are the real defendants. You have seen and heard all the witnesses, both manufacturers and mechanics, and probably know all or most of them, and can therefore judge for yourselves how far their testimony has probably been influenced by the interest they may have.

The manufacturers of iron are unanimous in their allegations, that these pieces of iron are not chain links; that they are not a manufacture of any description, other than bar iron cut into small pieces, which does not change their quality, their character, or their denomination: (1) Edward Smith, a merchant and manufacturer, considers the small straight pieces to be short bar iron; he would enter the round ones at the custom house as bolt iron. They might be applied to many purposes. To show that the mere act of cutting a long piece of iron into smaller pieces, does not change its character or name, he says, that hoop iron is rolled out into pieces thirty or forty feet long, and then at the same factory, cut into such lengths as may be ordered, but it is still hoop iron, not a hoop, although prepared for one. Sometimes, he says, the holes are punched at the end, still it is not a new manufacture, nor as such entered at the custom house. You may remember here what was said of railroad iron, which are bars of iron, cut into the required lengths, and holes punched in them; they were nevertheless considered to be bar iron, or iron in bars, and paid duty accordingly. (2) Samuel Richards would call these things, "pieces of bar iron," both bent and straight; he often sells pieces three or four feet long, each is called a "bar." Many articles are bought and sold as bar iron, which are not in bars. Should he receive an order for a ton of bar iron three feet, and another fifteen feet long, he would suppose they described the same article. (3) Benjamin Reeves calls the small one a "piece of rod" and the thicker one a "piece of bolt iron." He does not know what to call the large twisted pieces. The shortness of a piece of bar or bolt iron, does not change its character. He often sells short pieces as bar or bolt iron. Many articles are considered as bar iron, that are not straight bars. (4) Andrew M. Jones would call the thick one, a "piece of bolt iron"; the thin, a "piece of braziers' rod"; the bent ones, "pieces of bent round iron," but not at all a separate article of manufacture. He should import it as bolt iron. The shortness does not change the character of the article. He has cut several tons into harrow teeth and invoiced them as square bar iron. (5) Clement M. Buckley, calls it a "piece of bolt iron," a "braziers' rod." The bent piece is a piece of bolt iron bent for the purpose of making a link. The shortness of the piece does not change its character, it retains its character of bar iron. He rolls

bars from twenty to thirty feet long, and then he cuts them. The cost is trifling. He cuts them sometimes to suit his wagon, sometimes into short pieces two feet long, to make sheet iron; it is nevertheless, known as bar iron, although cut expressly to make sheet iron. He would furnish one hundred tons cut into pieces of six inches long, for the same price as long bars.

These witnesses concur in testifying that these pieces of iron are not chain links; that they are bar or bolt iron cut into short pieces, and in no other respect differing from the long bar and bolt iron; and that this difference of length does not change either the character or denomination of the article. And this is what you are to decide, on a fair and intelligent consideration of all the evidence on the one side and the other. If you should be of opinion that they are not chain links, that they are not a new and distinct manufacture, that they have not assumed a new name or use in their present state, but you should also think they are not iron in bars or bolts, or bar iron, they would then be subject to a duty of fifteen per cent. under the general provision of the law of April 27, 1816, unless you can consider them as part of an iron cable or chain. Upon this there has been much contradictory testimony. Literally speaking a link or two links are a part, a constituent part of a chain, which is made up of many links. But it is alleged that, technically speaking, a part of a chain or iron cable, consists of a length of fifteen or twenty feet long, connected by what are called shackles. There is certainly a difficulty under the law in admitting this signification of "part of a chain." The act intends to put a much higher duty on an iron cable or chain, or part or parts thereof, than on bar iron. But if it may be brought in pieces of ten feet long, and without shackles, it will not pay the duty on iron cables because it is neither an iron cable or chain nor part of one. It will not pay even the duty of bar iron, because it is a manufacture of iron from the bar, not enumerated and specified in the act; and thus a manufacture evidently intended to be heavily taxed, will come in for a very low duty of twenty-five per cent. ad valorem.

It is for you to decide whether these pieces of iron are chain links, and if so, are they parts of a chain cable, and if not parts of a chain, can they be chain links. If you shall reject them as links, and also as parts of a chain or iron cable, are they bar iron? You will observe that the clause of the act of congress under which the thirty-seven dollars per ton is claimed by the United States, uses the terms "on bar or bolt iron," not on "iron in bars or bolts," as in the preceding clause and in other acts. You will naturally inquire whether this change in the expressions is inadvertent or intentional; is meant to describe the same or a different article. If the same, why is the phraseology changed?

If different, in what does the difference consist? By "bar iron," are we to understand, a particular description of iron; in a certain state of manufacture; iron of a certain quality, kind, and character? Should you be told that an article was made of bar iron, would you understand that it was made of iron of a certain character and quality, as distinguished from pig iron, from bloom iron, from cast iron, without any reference to the shape, size or length of the bar or piece of iron from which it was made? On the other hand, should one speak of a bar of iron, or of iron in bars, would you not suppose he had reference to their form, shape, size and length? It has been proved that plough shares and sickles, or other articles of manufacture, are properly called "bar iron"; they are bought and sold by that name; but could we say that they are "bars of iron," or "iron in bars"? If we could not, there would seem to be a difference of meaning in the two forms of expression used in the same act of congress, unless this difference is controlled by other parts of the act. To give you another illustration of the effect of this change of phraseology. If we were to speak of a "pig of iron," or of "iron in pigs," would we not mean iron of a certain known quality or manufacture, in pieces called "pigs"; thus describing both the character of the iron, and the ordinary size and shape in which it is made? But if we were to speak of "pig iron," would we not intend to describe or signify the particular quality and kind of that iron, without any reference to its size or shape? If we had in our hand a piece of iron six inches square, we might say this is "pig iron," but could we say this is a "pig of iron," or, if more than one, "iron in pigs"? These are questions for your consideration so far as you shall deem them to be material, in deciding the issue you are trying. If then the terms "iron in bars," and "bar iron," in truth, in their common and proper understanding, as they are taken by commercial usage, do mean and intend the same thing, I would understand them also to mean the same description of iron, the same article of merchandise, in the act of congress. If, on the other hand, they have different significations, the one meaning merely the quality of the iron, and the other iron of the same quality in a particular form, we must so understand the act of congress; we must presume that congress understood the language they have adopted, as it is properly and commercially used and understood; and therefore that when they changed their expressions from "iron in bars or bolts" to "bar and bolt iron," they intended also the change of description imputed by the change of expression.

The defendant's counsel has endeavoured, with great industry and skill, to navigate his case between the bar iron on the one side, and the parts of an iron cable on the other, and to show you that chain links are neither

the one nor the other. It is a narrow strait, but, it may be, not impassable. This you are to determine. He must not have the article to be "bar iron," but a manufacture from it called a "chain link," and intended for a chain cable; and yet this chain link must not be a part of a chain cable, or he falls into a greater misfortune than with the bar iron. It must be neither a bar of iron, which it originally was, nor part of a chain which it is intended to be, but something between them, with a known destination, name, and use. It will hardly meet Mr. Buckley's definition, who says: "An article that is completed and fit for some use, and known by some name, I call a manufactured article."

I submit the whole case to you; the questions in it are questions of fact, to be decided by the evidence you have heard. Your judgment must be on that evidence. Certainly on the construction of the law contended for by the defendant, chain cables may be brought here, in separate links, requiring only to be connected and welded, at a much lower duty than bar iron; while a chain cable or part thereof is subjected to a much higher duty. If, however, this be the fair construction of the act, or if it be a defect of the act, the defendant is entitled to the advantage it gives him. I ought to add that this bond is given for the straight pieces only, and therefore your verdict will have a reference only to them. You are not now called upon to decide upon the bended or twisted pieces.

The jury found a verdict for the United States, for one hundred and sixty dollars and ninety-seven cents.